```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                        ATHENS DIVISION
```

SANDRA GRAY, *individually and*    *
*as executrix of the estate of*
*Nathan Gray*,                     *

    Plaintiff,              *

vs.                                *      CASE NO. 3:17-CV-153 (CDL)

PEGGY L. BROWN, *et al.*,          *

    Defendants.             *

---

## O R D E R

Presently pending before the Court is the motion to dismiss of Defendants Ocwen Loan Servicing, LLC ("Ocwen"), The Bank of New York Mellon f/k/a The Bank of New York, Successor in Interest to JPMorgan Chase Bank, as Trustee for Novastar Mortgage Funding Trust, Series 2005-2, Novastar Home Equity LOA Asset-Backed Certificates, Series 2005-2 ("Mellon"), JPMorgan Chase Bank, as Trustee for Novastar Mortgage Funding Trust, Series 2005-2, Novastar Home Equity LOA Asset-Backed Certificates, Series 2005-2 ("Chase"), and Mortgage Electronic Registration Systems, Inc. ("MERS"). These Defendants contend that Plaintiff's First Amended Complaint fails to state a claim against them. As discussed below, their motion to dismiss (ECF No. 24) is granted in part and denied in part. These Defendants also seek to strike Plaintiff's response to their motion to

dismiss because Plaintiff filed it a week late without leave to do so. But they also argue that the Court should consider the content of the response and deem certain claims to be abandoned. The motion to strike (ECF No. 34) is denied.

MOTION TO DISMISS STANDARD

"To survive a motion to dismiss" under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the factual allegations must "raise a reasonable expectation that discovery will reveal evidence of" the plaintiff's claims. *Id.* at 556. But "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in support of her claims. The Court must accept these allegations as true for purposes of the pending motion.

2

In 1987, Plaintiff and her husband Nathan Gray purchased a house located at 1540 Old Athens Highway, Monroe, Georgia 30656 ("Property"). They financed the purchase with a loan from Countrywide Funding Corporation. The next year, Nathan transferred all of his interest in the Property to Plaintiff. The year after that, Plaintiff executed a new security deed with Countrywide, and she was listed as the sole borrower and signatory for the $69,505.72 loan. Nathan made the monthly Countrywide loan payment from his individual bank account.

In 2005, Nathan applied for a refinance loan from Emmco, LLC. The loan application listed both Plaintiff and Nathan as joint titleholders of the Property. It did not list Plaintiff as a borrower or co-borrower. Plaintiff asserts that she did not know about this loan application. Emmco knew that Plaintiff was the sole owner of the Property, but it accepted the loan application and originated a loan for $112,500.00 to be secured by the Property "despite knowing that Nathan Gray had no legal interest in the Property." 1st Am. Compl. ¶ 24, ECF No. 20. At the closing of the loan on May 27, 2005, Nathan executed a promissory note to Emmco. He also signed a finalized loan application similar to the one he initially submitted to Emmco. Plaintiff was not present at the closing and did not sign the promissory note. Nathan also executed a security deed, which listed him and Plaintiff as the borrowers, Emmco as the lender,

3

and MERS as the grantee "as a nominee for Lender and Lender's successors and assigns." 1st Am. Compl. Ex. 6, Security Deed 1, ECF No. 20-6. The security deed contains a signature for "Sandra Gray," but Plaintiff asserts that it is not her authentic signature and that she did not sign any closing documents, authorize the loan, or attend the closing.

Defendant Peggy L. Brown was the closing attorney for the 2005 refinance loan. Defendant Ellen McDorman and Brown both notarized the documents that contained Plaintiff's signature, including the security deed and an acknowledgement and waiver of borrower's rights. According to Plaintiff, her signature is forged, and neither Brown nor McDorman verified the identity of the person who signed the documents.[1] Plaintiff alleges that Brown knew that Nathan did not hold title to the Property and was not authorized to sign the closing documents on behalf of Plaintiff. She further alleges that Emmco and Brown knew or should have known (by conducting a title search) that Plaintiff was the sole titleholder of the property but closed the

---

[1] Plaintiff further alleges that she did not present her driver's license to any of the Defendants. Defendants submitted a copy of Plaintiff's and Nathan's driver's licenses. Mot. to Dismiss Ex. C, Driver's Licenses, ECF No. 24-4. Defendants did not provide any context for this exhibit, such as where it came from. Even if they had, the Court cannot consider this disputed evidence without converting a motion to dismiss into a summary judgment motion. *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

4

refinance loan to Nathan anyway.  Finally, Plaintiff contends that there were irregularities with the closing documents—including two documents purporting to be the original security deeds and two documents purporting to be the original acknowledgment and waiver of borrower's rights.  Brown recorded the security deed on behalf of Emmco.  Plaintiff believes that Emmco assigned the loan to Mellon through MERS.  At some point, Ocwen became the loan servicer for the 2005 refinance loan.

Plaintiff alleges that she did not know about or receive any benefit from the 2005 refinance loan, although she does acknowledge that part of the loan proceeds were used to pay off the original Countrywide loan.  Nathan paid the monthly payments from his individual checking account, and Plaintiff did not have access to that account.  Nathan also received the mortgage statements at his private post office box, so Plaintiff did not see them.  Nathan died in February 2016, and Plaintiff was named executor of his estate on March 1, 2016.  At that time, she discovered the 2005 refinance loan.

On March 2, 2016, Plaintiff wrote a letter to Ocwen asking for proof of its right to service a loan associated with the Property.  In response, on March 10, 2016, Ocwen sent Plaintiff copies of the security deed, a commitment for title insurance, and an acknowledgment and waiver of borrower's rights that contained only Nathan's signature.  On March 30, 2016, Ocwen

sent Plaintiff copies of an allonge listing Nathan as the borrower for the loan, the note executed by Nathan, two Forms 4506-T (Request for Tax Return) signed by Nathan, and the loan applications listing Nathan as the borrower for the loan. Ocwen also informed Plaintiff that Mellon "currently owns the loan and holds the Note." 1st Am. Compl. Ex. 7, Letter from Ocwen to S. Gray (Mar. 29, 2016), ECF No. 20-7 at 2. On April 11, 2016, Ocwen sent Plaintiff additional copies of these documents.

Plaintiff resumed paying the mortgage in April 2016, although she asserts that she did so under protest. Ocwen accepted her payments. Later in 2016, Plaintiff retained a lawyer to help her investigate the loan issue and notified Ocwen of a potential lawsuit. At that point, Ocwen stopped communicating directly with Plaintiff and began sending her mortgage statements and other documents to her attorney. Plaintiff and her attorney have both asked that these documents be sent directly to Plaintiff instead. In early 2017, Plaintiff sent Ocwen an affidavit of identity theft. In response, Ocwen stated that it compared the signature on the affidavit to the account documents and determined that they matched; Ocwen suggested that if Plaintiff wished to pursue her claim of identity theft, she should file a court case.

In June 2017, Ocwen returned a payment made by Plaintiff and later sent her a default notice. Plaintiff then demanded

6

that Ocwen return all the money she had paid on the refinance loan since April 2016. Later that summer, Plaintiff filed this action.

Plaintiff asserts the following claims:

1. Count I: Negligence against Emmco, Brown, McDorman, Chase, Mellon, and Ocwen. 1st Am. Compl. ¶¶ 61-72.

2. Count II: Slander of Title against Emmco, Chase, and Mellon. *Id.* ¶¶ 73-81.

3. Count III: Declaratory Relief against Emmco, Chase, Mellon, and Ocwen. *Id.* ¶¶ 82-88.

4. Count IV: Bad Faith against Emmco and Ocwen. *Id.* ¶¶ 89-101.

5. Count V: Money Had and Received against Ocwen and Mellon. *Id.* ¶¶ 102-111.

6. Count VI: Fraud and Deceit against Emmco, Brown, and McDorman. *Id.* ¶¶ 112-125.

7. Count VII: Violations of the Real Estate Settlement Procedures Act ("RESPA") against Ocwen. *Id.* ¶¶ 126-132.

8. Count VIII: Missing Statements Violation against Emmco. *Id.* ¶¶ 133-138.

9. Count IX: Missing Disclsure Statement Violation against Emmco. *Id.* ¶¶ 139-144.

10. Count X: Disclosure Violation against Emmco. *Id.* ¶¶ 145-153.[2]

DISCUSSION

Mellon, Ocwen, Chase, and MERS seek dismissal of all of the claims against them. These Defendants first argue that the Court should conclude that Plaintiff abandoned her negligence,

---
[2] In her original Complaint, Gray brought claims against Law Offices of Peggy L. Brown, P.C., but she did not assert any claims against that entity in her First Amended Complaint.

slander of title, and RESPA claims by failing to address those claims in her response to Defendants' motion to dismiss. In support of this argument, these Defendants point to cases from the Northern District of Georgia, which has a local rule stating that a party's failure to respond to a motion "shall indicate that there is no opposition to the motion." N.D. Ga. R. 7.1(B). This Court has no such local rule. Defendants also point to a number of summary judgment cases, which do not apply here because the standard of review is different. At summary judgment, the non-moving party must come forward with evidence to show that there is a genuine fact dispute. In contrast, "at the motion to dismiss stage, the scope of a court's review must be limited to the four corners of the complaint." *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007) (per curiam) (finding that the district court erred by concluding that the plaintiff abandoned certain claims "by failing to adequately address them in his response brief"). Therefore, the Court declines to find that Plaintiff abandoned these claims by failing to respond to Defendants' motion to dismiss them. The Court now turns to the merits of each claim.

**I. Negligence Claims**

Plaintiff's negligence claims are against Emmco, Brown, McDorman, Chase, Mellon, and Ocwen. Mellon, Ocwen, and Chase contend that Plaintiff's negligence claims against them are

"negligent loan servicing" claims. Such claims are not recognized under Georgia law because the duties a bank owes to its borrowers generally arise solely out of the parties' contractual relationship. *See, e.g.*, *Fielbon Dev. Co., LLC v. Colony Bank of Houston Cty.*, 660 S.E.2d 801, 808-09 (Ga. Ct. App. 2008) (concluding that the trial court erred in denying directed verdict on a negligent loan servicing claim because there was no evidence that the bank owed the borrower any duty independent of the parties' contract). So to the extent that Plaintiff attempts to assert negligent loan servicing claims against Mellon, Chase, and Ocwen, those claims are dismissed.

Plaintiff did not respond to Defendants' motion to dismiss her negligence claims against Mellon, Chase, and Ocwen. She did not seek to clarify her negligence allegations against them. But, based on the Court's review of Plaintiff's First Amended Complaint, Plaintiff's negligence claims are clearly not for negligent loan servicing. Rather, her negligence claim against these Defendants appears to be that although these Defendants had enough information to know that her signature on the security deed was forged, Chase and/or Mellon accepted an assignment of the note and security deed anyway and Ocwen undertook servicing the loan. In other words, Plaintiff appears to assert that these Defendants were negligent in failing to recognize that there was no legitimate borrower-lender

9

relationship between Plaintiff and Emmco. Thus, according to Plaintiff, there is no basis for Mellon and/or Chase to assert a security interest in her home and no basis for Ocwen to demand loan payments under a forged security deed. Contrary to Defendants' argument, this claim is not based on duties that arise out of a contract or out of a legitimate lender-borrower relationship. Plaintiff alleges that no such relationship existed between her and these Defendants. Defendants did not move to dismiss such a claim, and the Court declines to dismiss it *sua sponte*.

**II. Slander of Title Claim**

Plaintiff asserts slander of title claims against Emmco, Chase, and Mellon. Defendants Mellon and Chase seek dismissal of Plaintiff's slander of title claim against them because Plaintiff did not plead facts to support all of the elements of such a claim against these Defendants. Plaintiff did not respond to Defendants' motion to dismiss her slander of title claim against these Defendants.

"The owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." O.C.G.A. § 51-9-11. To state a slander of title claim under Georgia law, the plaintiff must allege "[1] possession of an estate in the subject property; [2] publication of defamatory

10

words against the property; [3] that the words were false and malicious; and [4] that the plaintiff thereby sustained special damages by loss in the value of the slandered property." *M & M Mortg. Co. v. Grantville Mill, LLC*, 690 S.E.2d 630, 633 (Ga. Ct. App. 2010).

First, although Plaintiff alleges that Brown recorded the security deed on behalf of Emmco in 2005, she did not allege any facts to suggest that Mellon or Chase was involved in that action. Second, even if she had, she did not allege any facts to suggest that Mellon or Chase acted with malice. Third, even if she had alleged facts to suggest that Mellon or Chase maliciously published defamatory words against the property, she did not allege any special damages caused "by loss in the value" of her property that flowed from that act. *See id.* at 633-34 (explaining that special damages for purposes of slander of title claim do not include attorney's fees incurred to remove a lien and also do not include general evidence that the allegedly defamatory words hindered a plaintiff's ability to obtain a loan); *cf. Sanders v. Brown*, 571 S.E.2d 532, 536 (Ga. Ct. App. 2002) (finding sufficient evidence of special damages because landowner proved that she lost two contracts for sale of land due to slander of title, that she had to refund earnest money, and that she had to pay a real estate commission). For these

reasons, Plaintiff's First Amended Complaint fails to state a slander of title claim against Mellon and Chase.

**III. Declaratory Judgment Claim**

Plaintiff seeks a declaratory judgment against Emmco, Chase, Mellon, and Ocwen. She seeks a declaration that these Defendants have no legal or equitable rights in the note and security deed and no legal standing to institute foreclosure proceedings. Essentially, she seeks a declaration that the 2005 promissory note and security deed must be canceled due to fraud because Nathan had no authority to authorize the refinance loan secured by the Property of which she was the sole owner.

Plaintiff alleges that Emmco knew that it did not hold a legitimate security interest in her home because it knew that her signature on the security deed was forged. She alleges that Emmco assigned the security deed to Mellon and/or Chase. She further alleges that the assignment was invalid because Emmco knew that it did not hold a legitimate security interest and Mellon and/or Chase had enough information to know that Emmco did not hold a legitimate security interest. Defendants contend that these allegations are not sufficient to support Plaintiff's declaratory judgment claim because Plaintiff did not submit *evidence* of an assignment to Mellon and/or Chase. But Plaintiff does not have the burden to produce evidence at this stage in the litigation.

Defendants also argue that Plaintiff cannot pursue the remedy of a declaratory judgment if she does not have a valid claim on the merits. That is true, but the Court has not concluded that Plaintiff lacks a claim on the merits. Even if the Court dismissed all of Plaintiff's claims against Mellon, Chase, Ocwen, and MERS (which the Court declines to do at this time), she still asserts fraud and negligence claims against Emmco, Brown, and McDorman. If Plaintiff were to prove these allegations and establish that the security deed should be set aside as void due to fraud, then that could affect any interest Mellon, Chase, Ocwen, and MERS may have in the security deed. Accordingly, the Court declines to dismiss Plaintiff's declaratory judgment claim at this time.[3]

**IV. "Bad Faith" Claim**

Plaintiff makes two "bad faith" claims against Ocwen. Her first bad faith claim against Ocwen appears to be based on Ocwen's decision to stop communicating directly with Plaintiff and begin communicating only with Plaintiff's lawyer after Plaintiff's lawyer notified Ocwen of a potential lawsuit.

---

[3] MERS is listed as a Defendant in Plaintiff's Complaint and is mentioned in the factual allegations. But MERS is not listed as a defendant in any of the *counts* of Plaintiff's First Amended Complaint, and Defendants moved to dismiss MERS on that ground. The 2005 security deed does list MERS as the grantee as a nominee for Emmco, and Plaintiff contends that MERS is a necessary party for that reason. The Court concludes that Plaintiff's sole claim against MERS is her claim for declaratory relief and that MERS should be included as a Defendant to the extent that it retains some interest in the promissory note or security deed.

13

Plaintiff did not respond to Ocwen's motion to dismiss this claim. It is not clear to the Court how Ocwen's decision to communicate with Plaintiff's lawyer rather than directly with Plaintiff constitutes bad faith in light of the notice of potential litigation. And, there are no allegations regarding how this decision resulted in any damages. Accordingly, this claim is dismissed.

Plaintiff's other "bad faith" claim against Ocwen is based on the fact that Ocwen returned Plaintiff's June 2017 payment and sent a default notice. Plaintiff's Complaint does not offer any clues regarding the legal basis for this claim, and the Court is unable to divine one from the factual allegations. In her response brief, Plaintiff did cite *Jennings Enterprises, Inc. v. Carte*, 481 S.E.2d 541 (Ga. Ct. App. 1997) for a definition of bad faith. That case involved a claim for expenses of litigation under O.C.G.A. § 13-6-11 based on a party's bad faith. *Jennings Enters.*, 481 S.E.2d at 545. It did not recognize an independent claim for "bad faith."

The Court has not found any authority for the type of "bad faith" claim Plaintiff asserts in this action. The Court notes that normally, a claim that the mortgage servicer did not properly apply a borrower's payments would be a breach of contract claim for failure to apply the loan payments in accordance with the security deed. But Plaintiff contends that

14

there is no contractual basis for Ocwen to service the mortgage loan associated with her property, so her "bad faith" claim is not in the nature of a breach of contract claim. And, while a borrower may generally bring a wrongful attempted foreclosure action against a loan servicer if the loan servicer improperly attempts to pursue a foreclosure sale, Plaintiff does not allege that Ocwen initiated foreclosure proceedings, so the "bad faith" claim is not in the nature of a wrongful attempted foreclosure claim. For these reasons, Plaintiff's "bad faith" claim based on Ocwen's return of her June 2017 payment is also dismissed.

**V. Money Had and Received Claim**

Plaintiff asserts a money had and received claim against Ocwen and Mellon. An action for money had and received "is the appropriate remedy where one wrongfully receives and retains the money of another." *J. C. Penney Co. v. West*, 230 S.E.2d 66, 68 (Ga. Ct. App. 1976). Such an action "is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another." *Id.* Plaintiff alleges that there is no legal contract between Plaintiff and Mellon/Ocwen that would allow them to collect payments from her. She also alleges that she has paid nearly $10,000 to Ocwen and Mellon "under the threat that failure to do so would lead to the acceleration of the promissory note and/or a non-judicial foreclosure of her home." 1st Am. Compl. ¶ 104.

Defendants argue that Plaintiff's money had and received claim is barred by the voluntary payment doctrine, which is codified at O.C.G.A. § 13-1-13. "Payments of claims made through ignorance of the law or where all the facts are known and there is no misplaced confidence and no artifice, deception, or fraudulent practice used by the other party are deemed voluntary and cannot be recovered unless made under an urgent and immediate necessity therefor or to release person or property from detention or to prevent an immediate seizure of person or property." O.C.G.A. § 13-1-13. Plaintiff has the burden to show that the voluntary payment doctrine does not apply. *Pew v. One Buckhead Loop Condo. Ass'n, Inc.*, 700 S.E.2d 831, 835 (Ga. Ct. App. 2010).

Plaintiff does not contend that she made payments to Ocwen based on misplaced confidence or Ocwen's artifice, deception, or fraudulent practice. Rather, she alleges that she knew she did not take out a loan secured by the Property but decided to stay current on the loan payments when she discovered the refinance loan after Nathan died. Under Georgia law, "a payment is not made under compulsion or duress, but will be treated as voluntary, unless the party making payment does so to prevent the immediate seizure of his goods or the arrest of his person." *Id.* (quoting *Darby v. City of Vidalia*, 149 S.E. 223, 223 (Ga. 1929)). "Furthermore, the doctrine appears to be that if the

law affords to the person from whom the payment is exacted an immediate and adequate remedy to resist payment, he can not be said to have acted under compulsion, if, neglecting to avail himself of such remedy, he elects to make the payment demanded of him." *Id.* (quoting *Darby*, 149 S.E. at 223). In *Pew*, for example, a condominium association filed three lawsuits against a condominium owner to collect unpaid assessments—one in 2006, one in 2007, and one in 2008. The owner settled the 2006 and 2007 lawsuits by paying the full amounts he owed to the association. In the 2008 lawsuit, the owner counterclaimed for a set-off for alleged overpayments in connection with the 2007 case. The Georgia Court of Appeals, however, determined that the owner had "made the payments in issue voluntarily in lieu of pursuing the 2006 and 2007 cases." *Id.*

Here, Plaintiff asserts that she made the payments in 2016 and 2017 "to prevent an immediate seizure" of her property. But she did not allege that an immediate seizure was imminent when she made the payments. And, she did not file this action until August 2017. Under these circumstances, the Court finds that Plaintiff's money had and received claims should be dismissed under the voluntary payment doctrine.

## VI. RESPA Claim

Plaintiff asserts a RESPA claim against Ocwen. Under RESPA, if a borrower sends her mortgage servicer a "qualified

17

written request" seeking account corrections or account information, the servicer must respond to the request within thirty business days by correcting the account or providing the borrower with a written explanation of why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(1)-(2). Ocwen claims that Plaintiff does not have standing to assert a RESPA claim because RESPA only provides for actions by "borrowers" and Plaintiff alleges that she was not obligated on the promissory note and should thus not be considered a "borrower" within the meaning of RESPA. But the security deed lists Plaintiff as a borrower, and it is certainly Defendants' position that she is a borrower on the loan. Therefore, she has standing to pursue a RESPA claim. The next question is whether she adequately alleged one.

Ocwen also argues that even if Plaintiff does have standing to assert a RESPA claim, she did not adequately allege one. The Court agrees. Plaintiff claims that she sent a qualified written request to Ocwen on March 2, 2016 "to request information and documentation from Ocwen that supported its right" to service the mortgage on the Property. 1st Am. Compl. ¶ 48. Plaintiff did not attach her letter to her First Amended Complaint, and she did not allege any details about her letter, such as where she mailed it or what, specifically, it requested. There are no allegations in the First Amended Complaint that the

letter included "a statement of the reasons for" Plaintiff's belief "that the account is in error" or provided "sufficient detail to the servicer regarding other information sought by the borrower" as required by RESPA. 12 U.S.C. § 2605(e)(1)(B)(ii). Thus, Plaintiff did not adequately allege that her March 2, 2016 letter met the statutory requirements for a qualified written request.

Even if the Court assumes that Plaintiff adequately alleged that her March 2, 2016 letter to Ocwen was a qualified written request, she did not allege any facts to suggest that Ocwen failed to respond as required by RESPA. Again, when a loan servicer receives a qualified written request, it must respond to the request within thirty business days by either correcting the account or providing the borrower with a written explanation of why the servicer believes the account is correct. 12 U.S.C. § 2605(e)(1)-(2). Here, based on the plain allegations of Plaintiff's First Amended Complaint, Ocwen did the latter. Plaintiff alleges that Ocwen sent her three separate responses within thirty workdays. At least one of the response letters disclosed that Mellon owns the loan and holds the note, and the letter provided an address and telephone number for Mellon. At least two of the responses included a copy of the security deed and other loan documents that Ocwen asserted were its basis for servicing the loan. Plaintiff now contends that these responses

19

were inadequate because none of the documents Ocwen sent her contained her authentic signature.  But she does not allege that her March 2, 2016 letter put Ocwen on notice of this issue or requested a correction on this basis.  For these reasons, Plaintiff's First Amended Complaint fails to state a RESPA claim based on her March 2, 2016 letter.

CONCLUSION

For the reasons set forth above, Defendants' motion to strike (ECF No. 34) is denied.  Defendants' motion to dismiss (ECF No. 24) is granted as to Plaintiff's slander of title, bad faith, money had and received, and RESPA claims against these Defendants but is denied as to her negligence and declaratory judgment claims against them.  All of Plaintiff's claims against Peggy L. Brown, Ellen W. McDorman, and Emmco, LLC also remain pending.  Gray no longer asserts claims against Law Offices of Peggy L. Brown, P.C., so that Defendant should be terminated.

IT IS SO ORDERED, this 23rd day of April, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA